May it please the court, why did Tammy O'Reilly file her Equal Pay Act claim? John Wirth was the acting manager of the St. Louis branch of Daugherty Business Systems and he told her this, when Bill Thoreau left the company in June of 2017 while discussing his leaving at a company event, Mr. Wirth said to Ms. O'Reilly, the funny part is Tamara, Bill makes almost double what you make. That's in the appendix of 38. When Plaintiff left the company subsequently in November of 2017, she thought she wasn't being paid the same as the men in the company. Why is that important? Because it informed her on how she answered the interrogatories when she was asked about comparators for her prima facie case. If John Wirth, who's running the company, tells Tamara O'Reilly that Bill Thoreau was making twice what she was, then maybe some of the other men were making twice what she was in the first three years that she worked for the company as well. However, this is the key point. What she discovered after we received the salary data and after she had answered interrogatories, she realized that she was making the same or more than many of the men that she answered in the interrogatories. It took us over a year to get that data and those comparators Ms. O'Reilly was talking about were in three roles at the company prior to her being promoted as a director client partner in May of 2017. That's why in our opposition to summary judgment, she only identified a single comparator, which was Drew Davis in St. Louis, because there were only two client partner directors in St. Louis in June of 2017, which was a new position for the company across all of their branches. Now, the error committed by the trial court here is that Judge Clark framed the Priam Fascia case as looking at all of those comparators in all four of the jobs that she had. As I mentioned, there's only two comparators. There's only two director client partners in St. Louis in 2017. It's Drew Davis and Tammy O'Reilly. Here's why that's important. In Judge Clark's opinion, he cites seven cases for the proposition that a plaintiff who's had male comparators that make the same or more cannot state a Priam Fascia case, relying on the Soule and O'Reilly-Welley case. But if you look at those cases, each one of those cases in Hutchins, it's the same job. They're all organizers. In Sowell, it's tool makers in the tool room. In O'Reilly versus Welley, the UPS case, they're all mail package managers. In Grabovac, they're all marketing business consultants. In Evans, it's five employees in the auto zone, four men, one woman. In Garrard, they're all van drivers. What Judge Clark did in this case, which I think is error as a matter of law, is that he said there were 12 male comparators and said that Ms. O'Reilly made more than several of them or the same, and therefore, she could not make out a Priam Fascia case with a single comparator. But the error in doing that is that the universe of comparisons is two. It's Drew Davis and Tami O'Reilly. They're the only directors, only client partners in St. Louis. And the undisputed evidence, which was conceded by Doherty, was that Drew Davis, when he was brought in two months after Ms. O'Reilly was promoted, he was paid $275,000 a year. Ms. O'Reilly was paid $200,000 a year. That states a Priam Fascia case under the Equal Pay Act. Now, there's a couple of ways I believe this court can reverse summary judgment here. One is resolve the conflict that Mr. Horvitz is going to speak to as amicus in this case and whether a single comparator is sufficient. The other is that, as I pointed out, each of the cases relied on by Judge Clark were cases in which the same job had the same comparators. Here, Judge Clark conflated four different jobs to create a universe of comparators that made it appear as if Ms. O'Reilly could not state a Priam Fascia case. And I believe that is error. And to make an analogy here, Ms. O'Reilly, when she was promoted to Director of Client Partner, it's like being promoted from a manager to a vice president. She can't make out an Equal Pay Act claim in all those manager roles. She has three different manager roles before she's promoted to the vice president type role in May of 2017. That's why in our response to summary judgment, we only pointed to Drew Davis because that's the only comparison for Priam and Fascia purposes. Do you make that argument in your brief? I thought you were the ones who had pointed, who had listed the comparators. No. We, unfortunately, it was framed by Ms. Schwab, but rightly so, she'd listed the comparators. The comparators came from the discovery responses, which were cited by the defendant in their motion for summary judgment. Judge Clark then ran from that. And I didn't really realize the distinction there, Judge, until preparing for this oral argument, I realized I'm using the framework given to us by the defendant, the framework by the court. That's not the right framework. It's one job. It's the director-client partner. There's only two comparators. It's Drew Davis and Tammy Riley. To make the point even further, Doherty actually created those jobs in 2017 across the branches. And I don't know this will be relevant at trial, but the evidence in the record is that they created this client-director, client-partner-director position. And there's actually six people in that position in 2017. And guess what? In St. Louis, it's Tammy O'Reilly and Drew Davis. Woman's paid $200,000. Drew Davis is paid $275,000. In Dallas, it's a woman, Colleen Finnegan. She's paid $210,000. In Chicago, it's Ravi Chandra, man, paid $250,000. In Atlanta, it was Monica Mueller, a woman. She was paid $250,000, but guess what? She's replaced by a man, Dan O'Keefe. He makes $275,000. So if the court had gone out and looked at all the new client-partner-director positions, you have three men, three women. The women are paid $200,000, $210,000, and $250,000. The men are paid $250,000, $275,000, and $275,000. So I'll reserve the rest of my time unless there's any questions. Let me ask you one question. Let's assume we agree with you that the proper compare. The court may have been led into the comparators of the lower position. It was your client thought initially that she was paid less than them, right? That's correct. That's what kind of led to some of that confusion. But let's say we agree with you now that it should just be director to director. Could we affirm on the basis of the affirmative defense of factors other than sex? In the sense that I think it's pretty undisputed that, I guess it's Mr. Davis has more experience as a director, more skills than your client. Would that be a possibility as an alternative ground to affirm? Yes, your honor. I was planning on addressing that in the rebuttal time. But I think under the standard review, you're correct. This court, even though it was not addressed by Judge Clark, could address that. But I think there are disputed material facts that would preclude judgment. Because first of all, it's an affirmed defense. It's their burden of proof. I don't think I can find any case in the Eighth Circuit where the Eighth Circuit has granted summary judgment to a plaintiff on a Title VII case or an ADA case where they have the burden of proof entitled to judgment as a matter of law. Because they're jury questions. It's credibility. Just because John Worth says he's a more experienced attorney does not entitle a jury to believe that. On a motion for summary judgment, you cannot credit interested witnesses on summary judgment under the standard review. That has to be taken in favor of the non-moving party. That's Reeves. And for that reason, and I can speak to it more because I don't want to waste my time. Finish your question. I'll give you a minute in rebuttal. Don't worry. So just to demonstrate a material fact, there are two material facts the defendant cited in their summary judgment motion that Judge Clark relied on. The past work experience at Ernst & Young. The second being his background in data and analytics, data management, and data warehousing. What the trial court ignored is that my client worked at Ernst & Young at the same time as Mr. Davis. They both had the same experience in Ernst & Young. So that is a dispute of that material fact, which should not be credited in our motion for summary judgment because it's in the favor of the non-moving party. And that reason alone would defeat the affirmative defense before you can get to the credibility determinations. I would concede that we could lose a trial, but it's a jury question. If you look at the fourth affirmative defense and you look at the statement that Mr. Davis had more data experience and had managed those types of questions, your client agreed that that was true. That's correct. Isn't that sufficient to be an undisputed fact that would be sufficient to support the affirmative defense? No, it's an undisputed fact that was admitted to by my client, but that does not entitle them to judgment because a jury does not have to believe that that was the deciding factor or a factor other than sex in the reason. Because she submitted other evidence in her work there in conjunction with the difference of base pay a jury could find for my client. Thank you. Thank you. Good morning, your honors. May it please the court. I'm Jeremy Horowitz with the EEOC. The Equal Pay Act forbids employers from paying different wages for equal work based on an employee's sex. The question in this case is whether once a plaintiff has established a prima facie case by pointing to a comparator of the opposite sex who is paid more for equal work, whether that's sufficient to establish this prima facie case or whether the plaintiff then needs to actually produce more in order to get to that point. And the rule derived from this court's decision in Hutchins is correct. That after the plaintiff has made this prima facie case, nothing further is required to establish that burden. And the burden then shifts to the defendant to prove that one of the affirmative defenses provided for in the statute applies. Now, the Hutchins rule predated Sewell. So for that reason alone, to the extent the two cases are in conflict, Hutchins controls. But it also is correct, we would submit, based on the statute itself, based on the wording of the statute and based on its purpose, what the Supreme Court described in Corn and Glass Works as being the broadly remedial purpose of ensuring equal pay for equal work. Let me ask it this way. It seems to me what happened here is that the ground shifted a little bit. That, and correct me if I'm wrong, but I suspect that Ms. O'Reilly pled that in her earlier positions and in her later position, she was paid differently than the male comparators. And so the district court lumped them all together. Number one, do you agree that that's what happened? And do you think that that is still erroneous? Can she shift her position midstream? Your Honor, that really goes to the, we'd say, frankly, it doesn't matter for the purposes of the Prima Fascia case, because she did mention Mr. Davis as being a comparator who earned more for equal work. And at that point, she had established the Prima Fascia case. And that was the basis on which the district court decided, didn't look at whether or not the defendant had established its affirmative defense. In fact, page 13 of the order specifically declined to do so. Well, I don't think I was talking about the affirmative defense. If I understand it right, the court looked at the comparators from her earlier position and said, well, she got paid more than some of them and less than some others, and then kind of lumped all the comparators together rather than just a one-on-one where we're now at. And my point is, didn't she maybe create that error by pleading that I was, you know, I was, I didn't get equal pay the entire time? Didn't she maybe create that problem? So, Your Honor, while that may be possible, the fact that she did point to a comparator, even if there were others, other potential comparators who did not earn more than she did, the fact that she could point to one, that was enough to establish this prima facie burden than shifting the burden on to the defendant to make it. Well, okay. That's an interesting question. I'd like you to expound on that a little bit. Let's say, hypothetically, there are 10 males that she, they do the same job, essentially. One gets paid more, nine get paid less. Does she have a prima facie case? She absolutely does, Your Honor, because she can point to an individual who is paid more for equal work. Now, that's not saying that that conclusively establishes liability. Instead, it merely shifts the burden onto the defendant to explain that the pay differential is based on, you know, is based on a permissible factor. And certainly at that point, taking into account these other nine individuals in your hypothetical, that may well be relevant to that showing. But in order to establish the prima facie case and to shift the burden onto the defendant to make this affirmative showing, that only a single comparator is needed. And as the district court cases that we cited explain, the alternative rule under Sewell, under which a plaintiff would need to show that every comparator makes more than the plaintiff, every potential comparator makes more, that would essentially immunize a defendant employer from really clearly discriminatory wage practices, so long as they can point to a single comparator who was able to, who made the same or less. And that really goes against this fundamental idea that the Supreme Court referred to as this broadly remedial approach taken by the EPA to ensure equal pay for equal work. Let's see, I, I don't know if your honors have any further questions there. If not, I mean, I believe I've made, again, with the. I just want to make sure I, there's no misunderstanding about what the district court did here. As I understand it, the district court said that Ms. O'Reilly did not make the prima facie case because there was one person who made more, and I think it was nine people who made less. And therefore, she did not establish the prima facie case. Am I correct? That, that is what the district court held. Exactly. And so it did not, it did not reach the issue of the affirmative defense. That's exactly right. Your honor, at page 13, the court mentioned that there was evidence as to this issue of the affirmative defense, but the court specifically declined to address that. If I may, your honor, in addition, there were these 10 comparators that the district court referred to, but it said that some of those comparators were actually not comparators because they didn't have similar jobs. So in a way, when it came up with this 10 to one ratio, it did sort of stack the deck. But again, we are saying that a single comparator is enough to establish that prima facie case. And then the burden shifts to the defendant. How many did the district court say there were actual were comparators? Was it six? I believe it was six. Yes, your honor. And, and all 10 and all six necessarily were identified in the complaint by the plaintiff as comparators. Is that correct? Uh, you know, I will, uh, defer to, uh, the plaintiff's counsel. I believe that was in a discovery response. I'm not sure if it was in the complaint or not. Okay. Okay. Thank you. Certainly, your honor. Thank you very much. May it please the court and counsel. My name is Abby Schwab and I represent the defendant of Pelley in this case, Doherty Systems, Inc. Doherty Systems requests that this court affirm and uphold the lower court's decision, granting summary judgment in Doherty's favor on the basis that Ms. O'Reilly was unable to establish her prima facie case under the Equal Pay Act. Doherty Systems also requests in the alternative that if this court were to find that Ms. O'Reilly was able to make a prima facie case, that it may still uphold the granting of summary judgment on Doherty's affirmative defense. Was that issue joined below? In other words, was that raised as part of, as one of the grounds for your summary judgment and responded to by the other side? Uh, yes, it was, your honor. We raised both the issue of affirmative defense. And they responded to it? And they did respond to that. Yes, your honor. And the court declined to reach that? And the court declined to reach that. I can only speculate that that was because they found no prima facie case. And if a plaintiff cannot establish that, there's no need to look at the affirmative defense. So then we would, as a panel, would have to review the summary judgment record to determine if summary judgment should have been granted. Yes, your honor. It's pretty unusual for us to do that. Yes. And I do, I do believe in this instance, the facts are relatively limited. Um, it is undisputed and I'll, I'll jump right into the affirmative defense, but I will go back to the issue of the prima facie case. But in this case, it is very clear that Doherty had an objective reason for the difference between Ms. O'Reilly's compensation and Mr. Davis's compensation. And this was alluded to earlier. It was that it was undisputed that Mr. Davis was hired into the role with considerable client partner experience. While Ms. O'Reilly admitted that prior to being promoted to the client partner role, she had no prior client partner experience. Uh, the decision maker in this case, Mr. John Wirth, unequivocally testified that with regard to Ms. O'Reilly, they were wanting to invest in her. They were wanting to move her into the client role and try and develop her. To develop her implies that she did not have the prior experience of a client partner. Mr. Wirth went on to say that it's as though Ms. O'Reilly would have been an entry level attorney versus a senior experienced attorney. Again, we were bringing her in to develop her. Now, counsel for Ms. O'Reilly argues that they have created a disputed fact as to whether or not Mr. Davis had more experience or whether or not Ms. O'Reilly had more experience. But what he fails to mention is that Ms. O'Reilly admits that Doherty considered factors other than sex when making the determination as to what compensation to pay Mr. Davis. Instead of arguing that they did not consider objective factors, Ms. O'Reilly argues that Doherty should have considered other objective factors or given weight to other factors that essentially ruled in her favor. What weight Doherty's system should give those objective factors is not Ms. O'Reilly's place. In all honesty, it's not this court's place to determine what factors other than sex should have been used or what weight to give those factors. If this court were to do so, it would be second guessing every decision that an employer is making where there are clear, undisputed, objective factors at issue that demonstrate the difference between the two salaries. I also want to point out that in her opposition to the summary judgment, Ms. O'Reilly simply identifies other skill sets that she had that Mr. Davis didn't have. And again, those skill sets are objective factors. So she is admitting that Doherty has relied upon objective, non-gender factors in making the decision. Now, they believe that they created a disputed fact because she was able to point to something that Mr. Davis did not have, and that is just not the law in this jurisdiction. In an attempt to establish that there was a disputed fact, Ms. However, in that case, the employer was unable to offer any direct evidence other than speculative evidence from an expert witness that there were factors other than sex considered in the compensation decision. Unlike Boeing, Doherty had explicit testimony, which Ms. O'Reilly could not dispute, that Mr. Davis's experience was greater than Ms. O'Reilly's, thereby justifying the difference in compensation. In turning my attention back to the issue of the prima facie case, which is what the district court issued its ruling upon, I think the justice point is well taken that it was Ms. O'Reilly who identified the comparators at issue in this case. And as a small background, it's worth noting that Ms. O'Reilly initially brought her action as a collective action in which she argued that there was a class-wide system at Doherty of paying women less than men. And in doing so throughout her case, she identified, I believe it was 10 male comparators who she believed to be making more than she was. Now, counsel for Ms. O'Reilly points out that as discovery went on, she learned that some of those men were either not performing equal work as she admitted in response to summary judgment, or that those men were actually paid less than she was. Their position is that once she determined that, it was obvious that the only male comparator at issue was Mr. Davis. However, at no point during her case did Ms. O'Reilly change her interrogatory responses. Did she change the position of her case? She has continued to premise her prima facie case on the fact that there were multiple male comparators who were paid more than her. And so I do believe that is why the district court looked at those 10 men and ultimately whittled it down to the six who were performing equal work to Ms. O'Reilly. So there was never a time when she argued to the district court that it's a one-on-one comparison between her and Davis? The only time I think she did is in response to the summary judgment, and that is simply by not responding to defendant's arguments with respect to those other comparators. She went immediately to the fact that Mr. Davis was paid more than she was, and argued that that was enough by itself to establish her prima facie case. Is there something that prohibits her from changing her theory like that? Uh, not that I'm aware of, Your Honor. I think it explains though why the district court and why defendant focused on those comparators, because those are the ones that Ms. O'Reilly had continued to set forth throughout this lawsuit. Okay. So if she's allowed to change her theory, so to speak, from six to the one-on-one comparison, what's wrong with her one-on-one comparison? Why doesn't that state a prima facie case? Doherty would concede that if the case were simply Ms. O'Reilly versus Mr. Davis, and there were no evidence in the record, and her position was not to include those other comparators, that under the precedent that that would be enough. For a prima facie? Case. Um, I do want to address though, both, uh, the EEOC and the district court's decision regarding. If you're looking at more than one comparator where a single male comparator is paid more and you have multiple male comparators paid less. Uh, both the appellant and the EEOC appear to argue that jurisdictions throughout the country have said that. As long as there is one male comparator performing equal work and being paid more. It does not matter if there are other male comparators who are earning less. And that is just not the law in this jurisdiction. And it is not the law throughout the United States. Uh, the EEOC argues that the Hutchins decision should be the controlling decision here. Well, I think their argument, and this is hypothetical because it's not really what we're looking at, but I think their argument is not that it's not relevant. It just, they still state their prima facie case. I think, yes, but I, the, the court and the holding in Hutchins does not find that a single male comparator is sufficient, even if there are other male comparators making less money. The court uses... Isn't the problem then, where do you draw the line? If it's, if, if it's a two, if it's a two person, as the plaintiff is now arguing in this case, she and Mr. Davis, you say, well, that's enough. So if it's three, one last, one more, is that enough? If it's four, two last, one more, is that enough? I mean, where do you, if, where, where do, how do, how do we do, how do we tell the district court? Where do you draw the line? Sure. And I think the difference is there's a, there's a small distinction again, where it's the one-to-one with Ms. O'Reilly and Mr. Davis, there are no other alleged comparators who are earning less than Ms. O'Reilly in that role. But if we're looking at the big picture as the district court did in lumping those comparators together, there were comparators in the district court's mind that were earning less. And so the Hutchins case and the cases that come after that use the phrase, at least some male comparators earning more. And in that instance, the court found that 12 male comparators earning more was sufficient to establish a prima facie case, despite the fact that there were other comparators earning less. A case that followed, which was Henick, the EEOC and Ms. O'Reilly's counsel point out, was another case where they said at least some male comparators were earning more. In none of those cases, neither of those cases, in the cases that follow, has the court interpreted at least some to mean one. And so while I can't tell the court what the bright line is, what I can say is that based on the precedents that have been cited by the other side, that in an instance where there is one male comparator earning more than the female plaintiff, yet there are multiple male comparators earning less, courts have consistently found that that does not establish a prima facie case. In those instances where a single male comparator earning more has been found to be enough, there were no male comparators who were earning less. And that's the situation we have if we look simply at Ms. O'Reilly versus Mr. Davis. And so for this court to hold as plaintiff and the EEOC, excuse me, as Ms. O'Reilly and the EEOC have requested, is that the court follow the Hutchins ruling and find that one male comparator is enough. I think that misstates the holding in Hutchins in the cases that come after that. And if the court really were to find that the presence of one male comparator earning more than a female, despite the fact that there were multiple males earning less, that would once again insert the court into decision-making and employers' decision-making where the evidence is clear that the gender was not the reason for the compensation difference as you have one man making more and multiple men making less. Is there a case from any circuit directly on point where you have that exact situation, one male comparator making more and multiple male comparators making less? No, Your Honor, not that we've been able to find. In all instances where a single comparator was found to be sufficient, there was no evidence that male comparators also made less. And there are court cases in this jurisdiction where the single male comparator was found to be sufficient, but again, that was where there were no male comparators making less in the plain time. But that's not our case here, right, because she has dropped her claim about the other comparators. It's now just Mr. Davis. Yes, Your Honor. And if that's the case, then the court allows her to drop those other comparators and finds that the district court should have looked at that one-to-one comparison. That would be sufficient if you ignore those other comparators to establish the prima facie case. Okay, and I asked you the question, is there any reason why she shouldn't be allowed to do that, to shift her theory, so to speak? My only argument, Your Honor, and I don't have case law to support this, is that she presented that through sworn verified interrogatory responses, that that was what supported her prima facie case, that those were the male comparators who were performing equal work and being paid more than she was. And so to the extent that that is a statement under penalty of perjury that she has made, I don't know how she can now come back and make an inconsistent statement without supplementing her interrogatory responses that she verifies, which she has not done in this case. So I would say that would be the reason why I don't believe she should be permitted to do that at this time. And just in closing, I will go back to, if this court does find that the comparison of Ms. O'Reilly to Mr. Davis is sufficient to establish the prima facie case, the district court's granting of summary judgment should still be upheld on the basis of Doherty's affirmative defense. I believe it is very clear in the record that Doherty believed that Mr. Davis had substantial experience in comparison to Ms. O'Reilly. Ms. O'Reilly has gone as far as admitting that Doherty considered objective factors in making compensation decisions. The idea that Doherty should have weighed some other skill set that she possessed or some other experience that she had over and above the experience that Mr. Davis brought into this specific role at issue is not what the law requires. And again, it would be allowing Ms. O'Reilly and this court to sit as a super personnel department, second-guessing the wisdom of what weight employers are allowed to give to objective factors. And unless there are any other questions from your honors, I will see the rest of my time. Seeing none, thank you. Mr. Geo, you were going to do rebuttal. I'll allow you two minutes, please. Thank you, Judge. I want to address your honors' questions. First, Judge Molloy, for a case on point for a single comparator with other males making less than the female comparator, that's EEOC v. Maryland, 879 F. 3rd, 114. It's a Fourth Circuit 2018 case at page 121 to footnote 8. And then I want to address Ms. Schwab's characterizing Ms. O'Reilly's admitting that there was a factor other than sex. She did not admit there was a factor other than sex. What she admitted was that was the stated reason for the affirmative defense. That's not admitting that it's true. Let me ask you the same question I asked Ms. Schwab. Was this affirmative defense asserted as a grounds for summary judgment, and were you given a full opportunity to respond to that? Yes, it was presented by the defendant. We opposed it. At the appendix 85 is where the defendant claimed the affirmative defense. Past work experience in Ernst & Young, background in data and analytics. Those are the two reasons asserted. And we opposed that in our response to summary judgment. And also on the record, what I mentioned earlier, Ms. O'Reilly also works at Ernst & Young at the same time as Mr. Davis. That's in the appendix 103, which disputes that meritorial fact. I want the jury to hear both of those and say, well, Mr. Wirth discounted her work at Ernst & Young, but he credited hers. So that testimony wouldn't have to be relieved, and therefore a jury could find in favor of Ms. O'Reilly. And Judge Gruden, I believe you said something about Ms., something like, well, Ms. O'Reilly's changing her position midstream. I wouldn't say that's what's happening, because I started this argument by saying she didn't know what they made. All she knows is that John Wirth said, Bill Thoreau made double than you. That's all she knew. We had to fight for a year, two motions to compel her to get the salary data. That's why it was in the complaint and the discovery answers. Initially, you were looking to bring a class action, right? That this was a pervasive thing throughout the company. So it did change. Yeah, well, and the collective action was certified. And we found that all of our named plaintiffs, every single one of them had a base salary lower than the men. Judge Clark decertified it, saying there wasn't a control factor. And that's not an issue in this case. But I don't want to leave the impression that there wasn't evidence of a class-wide discrimination against women under the Equal Pay Act. Because I believe there was. What you're arguing is essentially that you became aware of certain other facts. And that's why the argument here is somewhat different than it was presented to Judge Clark, right? Well, it's true. We became aware of the new facts. But to Judge Clark, all we said was, there's only two comparators. And unfortunately, I didn't realize that it was framed that way. We just said there were two comparators and didn't try and explain why it wasn't. Because we didn't think Judge Clark would look at all those other jobs and think that's what we were asserting. We only asserted two comparators in our response and summary judgment. Thank you. Thank you, counsel. We appreciate your appearance and briefing. Case is submitted and we'll issue an opinion in due course.